[No. B241316. Second Dist., Div. Seven. Oct. 15, 2012.]

JUAN G., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
THE PEOPLE, Real Party in Interest.

1482

## COUNSEL

Ronald L. Brown, Public Defender, Albert J. Menaster, Robert Krauss and Michael A. Theberge, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Roberta Schwartz and Shirley S.N. Sun, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**PERLUSS, P. J.**—Sixteen-year-old Juan G. was named in two wardship petitions filed in juvenile court alleging he had committed attempted murder and violated a criminal street gang injunction. After the People filed a

criminal complaint directly in superior court charging Juan with murder in an unrelated incident, the pending juvenile court petitions were transferred to adult criminal court without a fitness hearing. The juvenile court reasoned the district attorney's discretionary direct filing of the murder complaint constituted a finding of unfitness within the meaning of the governing transfer statute, Welfare and Institutions Code section 707.01, subdivision (a)(3)(A),[1] and no formal fitness hearing or additional finding of Juan's unfitness was required to transfer the pending wardship petitions.

We agree with Juan a judicial finding of unfitness following a hearing was required before the wardship petitions could be transferred to adult court. The juvenile court's contrary conclusion failed to consider the express language of section 606, which, in the circumstances presented here, prohibits a criminal prosecution based on the facts underlying a wardship petition absent a finding of unfitness by the juvenile court. In addition, the court's broad construction of the language in the transfer statute ignored the incremental development of the relevant juvenile law and violated fundamental principles of statutory interpretation disfavoring the implied repeal of existing law. Accordingly, we grant Juan's petition for a writ of mandate and direct respondent Los Angeles Superior Court to vacate its order deeming him unfit for juvenile court treatment and thereafter to conduct a formal fitness hearing pursuant to section 707.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2012 the People filed a wardship petition under section 602 alleging Juan had committed the crime of attempted murder (Pen. Code, §§ 187, 664) on January 8, 2012 and further alleging Juan had personally inflicted great bodily injury on the victim and the crime had been committed to benefit a criminal street gang. The petition specifically alleged Juan was 16 years old at the time of the alleged offense. Contemporaneously with their filing of the section 602 petition, the People also filed and served a motion for a determination Juan was not a fit and proper subject to be dealt with under the juvenile court law. (§ 707, subds. (b), (c).)

On February 14, 2012 the People filed a second section 602 petition alleging Juan had violated a criminal street gang injunction, a misdemeanor. (Pen. Code, § 166, subd. (a)(10).) Both matters were continued to February 28, 2012 for the setting of a fitness hearing.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Also on February 14, 2012 the People filed a criminal complaint (*People v. Gutierrez-Hernandez* (Super. Ct., L.A. County, No. BA393911)), alleging on October 26, 2011 Juan and a confederate had committed the crime of murder (Pen. Code, § 187) with special allegations Juan had personally and intentionally discharged a firearm proximately causing great bodily injury or death (Pen. Code, § 12022.53, subds. (b), (c), (d)) and the crime had been committed to benefit a criminal street gang.

At a hearing to schedule the fitness hearing on February 28, 2012, Commissioner Robert J. Totten, sitting as a juvenile court referee, noted the murder complaint naming Juan as a defendant had been directly filed in criminal court and explained his view of the governing law: "[W]hen there has been a direct filing, that is a determination by the Legislature that the minor is unfit and, therefore, pursuant to [section] 707.01 this case should go up to the adult court." The court then invited argument from counsel. The deputy public defender representing Juan argued transfer of the pending petition to criminal court required a judicial finding of unfitness; the discretionary direct filing of the criminal complaint did not carry with it an implied finding of unfitness within the meaning of section 707.01, the transfer statute. The deputy district attorney agreed with defense counsel's argument: "[I]n order for this case to go up, I believe the court needs to actually make a finding . . . . [T]he court cannot merely deem him unfit on a case without making a finding."

Following argument the court expanded on its reasoning, observing that section 707.01 refers to a finding of unfitness "pursuant to Section 707" as a prerequisite to transfer of a pending wardship petition and the authorization for discretionary direct filing in the criminal court is set forth in section 707, subdivision (d): "[I]t doesn't exclude (d)(1), it just says 707." The court also commented it would make no sense to have a minor subject to adult consequences in one case as the result of a direct filing yet continue in juvenile court on another case. Finally, the court expressed the pragmatic assessment that, even if an evidentiary hearing were held, evaluation of the criteria for determining fitness would undoubtedly result in a finding of unfitness in light of the pending criminal charge that "is so heinous that the Legislature determines . . . you have discretion to file as an adult."

The court then ruled "that the minor is, therefore, unfit for juvenile court and that this case is ordered to be filed in the adult court." The minute order reflects the matter was referred to the district attorney for prosecution in criminal court and the juvenile petition dismissed, with dismissal stayed

pending the filing of an adult complaint. The court thereafter stayed its orders pending a rehearing before a superior court judge. Juan timely filed a petition for rehearing, which was summarily denied.

After the stay was lifted, the People filed an amended criminal complaint in the pending felony case (*People v. Gutierrez-Hernandez, supra,* BA393911), alleging the October 26, 2011 murder as count 1, the January 8, 2012 attempted murder as count 2 and the December 15, 2011 violation of the criminal street gang injunction as count 3. The two pending section 602 petitions were then dismissed. Juan was arraigned on the amended complaint on May 1, 2012.

On May 21, 2012 Juan petitioned this court for a writ of mandate to compel the juvenile court to vacate its orders deeming him unfit for juvenile court treatment and thereafter to conduct a formal fitness hearing pursuant to section 707. At our request the People filed an informal response to the petition. Although they had previously supported Juan's position and urged the juvenile court to conduct a fitness hearing, in their opposition to the writ petition the People argued Juan was properly found unfit without a hearing based on the discretionary direct filing of a case against him in criminal court.[2]

On June 21, 2012 we issued an order to show cause why the relief requested in the petition should not be granted. On July 9, 2012 the People filed their return and answer to the petition, and on July 30, 2012 Juan filed his reply.

## DISCUSSION

1. *The Law Governing Trial of Juveniles as Adults*

    a. *Fitness hearings in juvenile court*

■ The juvenile court generally exercises delinquency jurisdiction over a minor who has violated the law while under the age of 18. (See §§ 602, 603.) In a variety of circumstances, however, minors who are alleged to have committed certain enumerated offenses at age 14 or older may, and in some instances must, now be prosecuted as adults in a criminal court.

---

[2] The People also asserted the writ petition was untimely, an argument they abandoned after Juan's counsel submitted an additional exhibit demonstrating the petition had been filed within 20 days of Juan's initial arraignment on the allegations that led to the unfitness finding. (See Cal. Rules of Court, rule 5.772(j).)

Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law. Since 1975 the procedural requirements for fitness hearings have been established by section 707. (See § 707, subds. (a), (c); Cal. Rules of Court, rule 5.766(a).)

Under current law, if the minor is 16 years old or older and is alleged to have committed an offense other than one of the serious felonies listed in section 707, subdivision (b),[3] the prosecutor may request a fitness hearing; the prosecutor has the burden of proof of unfitness. (§ 707, subd. (a)(1).) The court must order an investigation and report by the probation department on the behavior patterns and social history of the minor (*ibid.*) and base its evaluation whether the minor is amenable to the care, treatment and training programs available through the facilities of the juvenile court by considering the degree of criminal sophistication exhibited by the minor, whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, the minor's previous history of delinquency, the success of prior rehabilitation efforts and the circumstances and gravity of the offense alleged in the pending petition. (§ 707, subd. (a)(1)(A)–(E).)

■ If the child is alleged to have committed an offense listed in section 707, subdivision (b), and is 14 years old or older, a fitness hearing may be requested; in these circumstances there is a presumption of unfitness. (§ 707, subd. (c).) To rebut that presumption, the minor must persuade the court he or she is amenable to treatment under the juvenile court law based upon an evaluation of the same five criteria as used to determine fitness under section 707, subdivision (a)(1). Similarly, if the child is 16 years old or older and has been declared a ward of the juvenile court on at least two prior occasions for having committed two or more felony offenses when 14 years old or older and a fitness hearing is requested, although no subdivision (b) offense is alleged, there is a presumption of unfitness; the burden of rebutting the presumption is again on the minor, using the same five criteria to determine amenability to treatment. (§ 707, subd. (a)(2).)

b.   *Mandatory and discretionary direct filings in superior court*

■ In 1999 the Legislature amended section 602 by adding a new subdivision (b) to mandate direct filing in criminal court against any juvenile

---

[3] Section 707, subdivision (b) felonies include both murder (§ 707, subd. (b)(1)) and attempted murder—the offense alleged in Juan's January 13, 2012 wardship petition (see § 707, subd. (b)(12)). Misdemeanors, including violating a criminal street gang injunction, are not included in the list of section 707, subdivision (b) offenses. (See *In re Sim J.* (1995) 38 Cal.App.4th 94, 97–98 [45 Cal.Rptr.2d 30]; see also *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 805 [210 Cal.Rptr. 204, 693 P.2d 789].)

16 years old or older who had previously been declared a ward of the court for commission of a felony after he or she was 14 years old if the juvenile was alleged to have committed certain enumerated serious offenses. (Former § 602, subd. (b)(1)–(5), as amended by Stats. 1999, ch. 996, § 12.2, p. 7560; see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 549 [117 Cal.Rptr.2d 168, 41 P.3d 3] (*Manduley*) [as of Jan. 1, 2000 "certain minors who were 16 years of age or older at the time they committed specified crimes were required to be prosecuted in a court of criminal jurisdiction—without any requirement for a determination by the juvenile court that the minor was unfit for treatment under the juvenile court law"].) This provision for mandatory direct filing was further amended by Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, approved at the March 7, 2000 Primary Election (Proposition 21). (See generally *Manduley*, at pp. 544–546.) Currently, when a juvenile 14 years old or older is alleged to have personally committed murder with special circumstances or personally committed certain aggravated sex offenses under the "One Strike" law (Pen. Code, § 667.61, subds. (d), (e)), he or she must be tried directly in adult criminal court. (§ 602, subd. (b).)[4]

■ Proposition 21 also vested discretion in prosecutors to file a case against a minor in adult criminal court—commonly known as "discretionary direct filing"—in three categories of cases. Pursuant to section 707, subdivision (d)(1), unless direct filing is required by section 602, subdivision (b), the prosecutor may file an accusatory pleading in criminal court against any

---

[4] Proposition 21 also substantially rewrote section 707's provisions governing fitness hearings. Prior to the passage of Proposition 21, section 707 identified four categories of fitness hearings: In subdivision (a), as today, the section provided for a fitness hearing for minors 16 or 17 years old alleged to be persons described in section 602 (that is, properly adjudged to be a ward of the juvenile court) who had not committed one of the serious offenses listed in subdivision (b); as to these minors the prosecution had the burden of proving unfitness. Subdivision (c) imposed a presumption of unfitness at hearings for minors 16 or 17 years old who had allegedly committed a subdivision (b) offense. Subdivisions (d) and (e) authorized fitness hearings for minors 14 or 15 years old who had allegedly committed one of a series of serious felonies; if subdivision (d) applied, the People had the burden of proving unfitness; under subdivision (e) there was a presumption of unfitness. (Stats. 1998, ch. 936, § 21.5, pp. 6912–6918.) The final subdivision of former section 707 required the report submitted by a probation officer in connection with a fitness hearing to include victims' statements. (Stats. 1998, ch. 936, § 21.5, pp. 6912, 6917, 6918.)

Proposition 21 amended section 707, subdivision (c), to provide for a fitness hearing for any minor 14 years old or older (rather than 16 years old or older) who had allegedly committed one of the offenses listed in section 707, subdivision (b). As before, a presumption of unfitness applied in any section 707, subdivision (c), fitness hearing. Proposition 21 also added a new subdivision (a)(2), creating a presumption of unfitness for minors 16 years old or older even though no subdivision (b) offense was alleged if the minor had twice been adjudicated a ward of the juvenile court for committing offenses that would be felonies. Former subdivisions (d) and (e) were repealed. Former subdivision (f) requiring victims' statements in the probation report was renumbered as section 707, subdivision (e).

minor 16 or older who is accused of committing one of the serious felonies listed in section 707, subdivision (b).[5] The prosecutor may also file directly in criminal court against a minor 14 years old or older if the offense would be punishable by death or imprisonment in state prison for life if committed by an adult, if the minor is alleged to have personally used a firearm during the commission of a felony as described in Penal Code section 12022.5,[6] or if the offense is listed in subdivision (b) and certain other aggravating factors are present. (§ 707, subd. (d)(2).) Finally, discretionary direct filing is also authorized for offenses not listed in subdivision (b) if the minor is 16 or older and he or she was previously adjudicated a ward of the juvenile court at age 14 or older for committing a felony offense if the new offense was committed for the benefit of a criminal street gang or has certain other aggravating features. (§ 707, subd. (d)(3).) The constitutionality of discretionary direct filing under section 707, subdivision (d), was upheld in *Manduley, supra,* 27 Cal.4th 537.

  c. *Transfer of section 602 wardship proceedings to criminal court based on prior findings of unfitness*

 ██ If a minor is found unfit for treatment under the juvenile court law "pursuant to [s]ection 707" and there are other section 602 petitions pending as to which jeopardy has not yet attached, those petitions will also be transferred to the adult criminal court if the minor was 16 years old at the time of the alleged offenses or if the offenses alleged are eligible for a fitness hearing. (§ 707.01, subd. (a)(3).) New charges for which the prosecutor could seek a fitness hearing may also be filed directly in criminal court based on a prior finding of unfitness if the minor was convicted of the offense on which the finding of unfitness was based. (§ 707.01, subd. (a)(5).) Even if the minor was not convicted of committing the offense that resulted in the finding of unfitness, new charges for which the prosecutor could seek a fitness hearing may be filed directly in adult court if the prior finding of unfitness was based solely on the minor's delinquent history or the failure of previous rehabilitation efforts. (§ 707.01, subd. (a)(6).)

  2. *The Juvenile Court Improperly Deemed Juan Unfit and Transferred the Section 602 Petitions Without Holding a Fitness Hearing Pursuant to Section 707*

 ██ Under the statutory scheme described above, the district attorney's office had discretion to file directly in criminal court a complaint charging

---

[5] Proposition 21 also added several new offenses to the list in subdivision (b).

[6] Section 707, subdivision (d)(2) was subsequently amended to include felonies described in Penal Code section 12022.53, as well as those in Penal Code section 12022.5. (Stats. 2007, ch. 137, § 1, pp. 1021–1028.)

Juan with attempted murder (see § 707, subd. (b)(12)) or, as it did, to file a section 602 wardship petition and either allow the matter to proceed in juvenile court or move for a determination that Juan was not amenable to treatment under the juvenile court law under section 707, subdivision (c). Once a delinquency petition has been filed, however, section 606 provides the proceedings must remain in juvenile court unless the court finds the minor is unfit and transfers the matter to criminal court: "When a petition has been filed in a juvenile court, the minor who is the subject of the petition shall not thereafter be subject to criminal prosecution based on the facts giving rise to the petition unless the juvenile court finds that the minor is not a fit and proper subject to be dealt with under this chapter and orders that criminal proceedings be resumed or instituted against him, or the petition is transferred to a court of criminal jurisdiction pursuant to subdivision (b) of Section 707.01."[7]

Here, notwithstanding section 606, the juvenile court ordered the pending wardship petitions dismissed and criminal proceedings instituted against Juan in adult criminal court, deeming him unfit although there had been no fitness hearing and no prior judicial determination of his amenability to treatment under the juvenile court law. It purported to do so under the authority of section 707.01, subdivision (a)(3), which, as discussed, authorizes transfer to criminal court of all petitions pending against a minor as to which jeopardy has not attached who was at least 16 years old at the time of the commission of the offenses once the minor has been "found an unfit subject to be dealt with under the juvenile court law pursuant to Section 707." The court reasoned the discretionary direct filing by the district attorney's office of the February 14, 2012 murder complaint under section 707, subdivision (d), was a finding of unfitness within the meaning of that section. The People echo that analysis in this court, arguing the prosecutor's direct filing of a section 707, subdivision (b), offense in criminal court is "the equivalent of a proceeding resulting in a finding of unfitness."[8]

---

[7] Section 707.01, subdivision (b), authorizes the transfer to criminal court of juvenile petitions involving the circumstances identified in section 707.01, subdivision (a)(5) and (6), which include a finding of unfitness in connection with an earlier petition that was transferred to and tried in adult criminal court. It is not applicable to the case at bar.

[8] In *People v. Superior Court (Marcelina M.)* (2005) 133 Cal.App.4th 651 [34 Cal.Rptr.3d 940], the People similarly argued a discretionary direct filing in criminal court constituted a finding of unfitness as that term is utilized in section 707.01. The Court of Appeal did not reach that issue, finding the transfer of a subsequently filed juvenile petition under section 707.01, subdivision (a)(5), was improper because the minor had not been convicted of the offense that was the basis for the direct filing: "[E]ven if we were to assume that a direct filing by the prosecution in criminal court is the equivalent of a proceeding resulting in a finding of unfitness (a determination that we need not and are not making in this case), the failure of the People to sustain a violation that was the sole basis for the direct filing precludes application of section 707.01, subdivisions (a)(5) and (b)." (*Marcelina M.*, at p. 657.)

Although perhaps superficially plausible, the juvenile court's and the People's interpretation of the critical language in section 707.01, subdivision (a)—a finding of unfitness pursuant to section 707—suffers from several interrelated and fatal flaws. First, the proffered construction of the relevant statutes disregards section 606's express requirement that the *juvenile court* find the minor is not a fit and proper subject to be dealt with under the juvenile court law. Whatever else it may be, the prosecutor's discretionary charging decision is not a judicial determination of unfitness. (See *Manduley, supra*, 27 Cal.4th at p. 554 ["[a]lthough a decision to file charges directly in criminal court might preclude a juvenile court disposition, such a decision . . . constitutes an aspect of traditional prosecutorial charging discretion and does not intrude upon the judicial function"]; *id.* at p. 557 ["[t]he prosecutor does not usurp any fundamental judicial power in exercising such discretion . . ."].)

██ Second, even were we to ignore the fundamental difference between determinations by the executive and judicial branches, it is simply incorrect to characterize the prosecutor's discretionary decision to file charges against a minor in criminal court as a "finding of unfitness" for treatment under the juvenile court law. As the Supreme Court explained in *Manduley* in rejecting a constitutional challenge to section 707, subdivision (d), under the separation of powers doctrine, "the legislative branch properly has conferred upon the prosecutor the authority to establish the criteria guiding his or her decision whether to file an action in criminal court pursuant to section 707(d) . . . ." (*Manduley, supra*, 27 Cal.4th at p. 559.) "[J]ust as with other instances of the traditional charging power of the prosecutor, the statute vests in the prosecutor the power both to establish and to apply the criteria guiding that decision." (*Ibid.*) Thus, although information concerning the minor's prior criminal history and evidence of his or her current criminal conduct may be relevant to both a judicial determination of fitness and the executive branch charging decision, ultimately the prosecutor's decision must be " ' "founded on the complex considerations necessary for the effective and efficient administration of law enforcement." ' " (*Id.* at p. 561.) It is not solely, or even primarily, an evaluation whether the minor would be amenable to the care, treatment and training programs available through the facilities of the juvenile court. (Cf. *id.* at pp. 557–558 [describing prosecutor's decision to file charges directly in criminal court pursuant to § 707, subd. (d) as "an analogous determination that has the same effect as a decision regarding fitness"].)

Finally, the argument that section 707.01, subdivision (a)'s reference to section 707 necessarily includes discretionary direct filings under section 707, subdivision (d) and not simply the procedures for fitness hearings contained in section 707, subdivisions (a) and (c), ignores the incremental development of the relevant statutory scheme and is contrary to accepted principles of

statutory interpretation. Section 707.01 was added to the Welfare and Institutions Code in 1994. (See Stats. 1994, ch. 453, § 10.8, pp. 2533–2535.) At that time there were no provisions in the juvenile law for either mandatory direct filings or discretionary direct filings against minors in criminal court. Section 707, as amended by the same legislation that adopted section 707.01, authorized only findings of fitness or unfitness following an evidentiary hearing. (See Stats. 1994, ch. 453, § 9.5, pp. 2523–2528.) When it was adopted, therefore, section 707.01, subdivision (a)(3) plainly contemplated a transfer of pending juvenile petitions only after a judicial determination of unfitness had been made following a probation department investigation and report and an evidentiary hearing.

As reviewed above, five years later, in 1999, the Legislature amended section 602, adding section 602, subdivision (b), which mandated the direct filing of criminal cases against minors 16 years old or older under specified circumstances. (Stats. 1999, ch. 996, § 12.2, pp. 7560–7561.) That legislation (Sen. Bill No. 334 (1999–2000 Reg. Sess.)), known as the " 'No More Victims' Violence Prevention and School Safety 2000 Strategy," did not amend either section 707 or section 707.01; a finding of unfitness pursuant to section 707 and transfer of a pending petition pursuant to section 707.01, subdivision (a) could still occur only after a probation report had been prepared and an evidentiary hearing held by the court.[9] However, Senate Bill No. 334 did add two provisions to the Penal Code to deal with the sentencing of minors tried as adults. (See Stats. 1999, ch. 996, §§ 12, 12.1, pp. 7557–7558, 7559–7560.) The first sentence of new Penal Code section 1170.17, subdivision (a), which remains unchanged today, begins, "When a person is prosecuted for a criminal offense committed while he or she was under the age of 18 years and *the prosecution is lawfully initiated in a court of criminal jurisdiction without a prior finding that the person is not a fit and proper subject to be dealt with under the juvenile court law*, upon subsequent conviction for any criminal offense, the person shall be subject to the same sentence as an adult convicted of the identical offense . . . ." (Italics added.) Thus, when it required direct filings in criminal court under certain circumstances, the Legislature plainly did not intend that mandate to constitute a finding of unfitness as to the minor charged.

As of January 1, 2000, therefore, a juvenile could be tried in criminal court either by a mandatory direct filing in cases specified in section 602, subdivision (b), or following a finding of unfitness after a hearing as described in section 707. Once a judicial finding of unfitness had been made pursuant to the procedures prescribed by section 707, certain other pending petitions or newly filed petitions could be transferred to adult criminal court pursuant to

---

[9] The 1999 legislation did amend section 606 to authorize transfer of a wardship petition to criminal court pursuant to section 707.01, subdivision (b). See footnote 7, *ante.*

section 707.01, subdivision (a). The transfer provisions of section 707.01, subdivision (a), however, were not triggered by a mandatory direct filing.

Proposition 21, adopted in March 2000, further changed juvenile law by giving prosecutors discretion to file charges in criminal court under the circumstances set forth in section 707, subdivision (d), and by making other "modest, incremental changes to the existing statutory scheme." (*Manduley, supra,* 27 Cal.4th at p. 581 & fn. 14.) Proposition 21, however, did not amend either section 606 or section 707.01; and, while it expanded the circumstances in which a minor could be found unfit for juvenile court treatment in section 707, it did not eliminate the requirement for a fitness hearing before such a determination was made by the court.

■ The voters are presumed to have been aware of existing law at the time an initiative was enacted. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048 [56 Cal.Rptr.3d 814, 155 P.3d 226]; *People v. Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380]; see generally *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 212 [64 Cal.Rptr.3d 210, 164 P.3d 630] ["[t]he Legislature is deemed to be aware of existing statutes, and we assume that it amends a statute in light of those preexisting statutes"]; *People v. Licas* (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507] [" '[t]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes " 'in . . . light of such decisions as to have a direct bearing upon them' " ' "].)[10] Where an initiative does not expressly repeal existing statutes, an intention to overturn established principles of law is not to be inferred in the absence of either an irreconcilable conflict between the provisions of the initiative and existing law (that is, " 'the two acts are so inconsistent that there is no possibility of concurrent operation . . .' ") or " 'undebatable evidence of an intent to supersede the earlier' provision." (*Professional Engineers in California Government,* at p. 1038; see *Van Horn v. Watson* (2008) 45 Cal.4th 322, 333 [86 Cal.Rptr.3d 350, 197 P.3d 164] [" ' "[w]e do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied" ' "]; *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 779 [63 Cal.Rptr.2d 859, 937 P.2d 290] ["courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication"].)

[10] We apply the same principles that govern statutory construction in interpreting a voter initiative. (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 [107 Cal.Rptr.3d 265, 227 P.3d 858].)

■ Here, there is no irreconcilable conflict between section 707, subdivision (d), authorizing discretionary direct filings, and sections 606 and 707.01, subdivision (a), which prior to adoption of Proposition 21 required a judicial finding of unfitness before a pending juvenile petition could be transferred to adult criminal court. Nor is there anything in the language of Proposition 21 itself, the Legislative Analyst's analysis or the ballot arguments in favor of and against the initiative (<http://primary2000.sos.ca.gov/VoterGuide/> [as of Oct. 15, 2012]) that suggests any intent to alter the meaning of section 606 or 707.01, subdivision (a), or to repeal the requirement under then existing law that cases initiated in juvenile court, rather than by direct filing in criminal court, must remain there unless there has been a judicial determination, following a fitness hearing, the minor is not amenable to treatment under the juvenile law.

■ We recognize the public policy considerations identified by the juvenile court that arguably support automatic transfer of a pending juvenile petition to criminal court following a discretionary direct filing by the prosecutor in an unrelated case, including the practical reality the minor will in all probability be found unfit following the required evidentiary hearing. Nonetheless, our role is to interpret the statutes as they are written, not to establish policy. " 'The latter role is for the Legislature.' " (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1112 [133 Cal.Rptr.3d 738, 264 P.3d 579]; accord, *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1140 [90 Cal.Rptr.2d 804, 988 P.2d 1083].)

■ In sum, although the juvenile court found Juan unfit for treatment under the juvenile court law, it did so improperly, relying solely on the prosecutor's decision to file charges in the unrelated murder case directly in criminal court, and without holding a fitness hearing or complying with the other procedural requirements of section 707, subdivision (c). It was error to transfer the two pending section 602 petitions to criminal court for prosecution based on that inadequate finding. (See *Manduley, supra,* 27 Cal.4th at p. 566 ■ ["where a statute confers a right to a *judicial* determination of fitness for a juvenile court disposition, the due process clause requires that the determination be made in compliance with the basic procedural protections afforded to similar judicial determinations"].)

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the juvenile court to vacate its order deeming Juan G. unfit to be dealt with

under the juvenile court law and thereafter to conduct a fitness hearing pursuant to section 707, subdivision (c).

Zelon, J., and Jackson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 16, 2013, S206848.