Filed 6/11/21  P. v. Castillo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073780 |
| v. | (Super.Ct.No. RIF154701) |
| ALEXIS CASTILLO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorney Generals, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison V. Acosta and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

On October 29, 2010, an amended information charged defendant and appellant Alexis Castillo and Brian Aranda (her codefendant) with murder under Penal Code section 187, subdivision (a). The information also alleged that Aranda personally used a deadly weapon, an ice pick, to commit the murder under Penal Code sections 12022, subdivision (b)(1), and 1197.7, subdivision (c)(23).[1]

The charged crime occurred on December 3, 2009. Defendant, who was 15 years old at the time, aided Aranda, her boyfriend, in killing defendant's father with an icepick. The information was filed directly in adult court, not juvenile court.

On December 20, 2011, a jury found defendant guilty of first degree murder. Aranda's case resulted in a mistrial and the legal implications from the case went to the California Supreme Court. The trial court delayed defendant's sentencing for several years waiting for Aranda's case to be resolved.

On November 9, 2016, Proposition 57 became effective.

On April 16, 2018, although Aranda's case had not been resolved, the trial court decided to more forward with defendant's case. Defendant waived her right to have her case remanded to the juvenile court for a fitness hearing under Proposition 57. Thereafter, the trial court granted defendant's motion for a new trial and reduced her conviction to voluntary manslaughter. The People asked the trial court to delay the

---

[1] Aranda was tried separately and is not a party to this appeal.

sentencing until the granting of the new trial was appealed. The court declined and sentenced defendant to the upper term of 11 years in state prison.

On June 14, 2018, the People filed a notice of appeal from the judgment and order reducing defendant's conviction to voluntary manslaughter. Defendant did not file a cross-appeal.

On September 13, 2018, Sen. No. 1391 was enacted. It eliminated a prosecutor's ability to try juveniles under 16 years old in adult court. Sen. No. 1391 went into effect on January 1, 2019.

On November 16, 2018, the People filed a request to abandon the appeal. The request stated: "The reason for this action is the passage of Senate Bill 1391, signed into law on September 30, 2018, and effective January 1, 2019, is applicable to this matter as it is not final on appeal." On November 19, 2018, we dismissed the appeal and issued a remittitur. The order stated: "Appellant filed an abandonment of appeal, the appeal is DISMISSED and the remittitur is ordered to issue immediately. (California Rules of Court, rule 8.316.)"

On February 19, 2019, defendant filed a motion to vacate the judgment under Sen. No. 1391. She sought to have the case remanded to juvenile court for issuance of a juvenile court disposition. Defendant argued that her sentence was unauthorized. The People opposed the motion and argued that Sen. No. 1391 was unconstitutional and that defendant's case was final when it went into effect on January 1, 2019.

On April 11, 2019, the trial court denied defendant's motion. The court ruled that Sen. No. 1391 was unconstitutional and that defendant could not benefit from the newly-enacted law because her judgment was final when the law went into effect.

On June 7, 2019, defendant filed a motion for reconsideration. She argued that the People had conceded Sen. No. 1391 applied and that the relevant date for finality was when it was enacted, not when it became effective. Defendant cited to an opinion that held that Sen. No. 1391 was constitutional. The People again opposed the motion.

On August 14, 2019, the trial court found that Sen. No. 1391 was constitutional but denied the motion because defendant's case was final.

On September 26, 2019, defendant filed a timely notice of appeal from the order denying her motion for reconsideration.

For the reasons set forth below, we affirm the trial court's order denying defendant's motion for reconsideration.

## DISCUSSION

On appeal, defendant contends that the trial court erred in denying her motion for reconsideration because the People are judicially estopped from arguing that Sen. No. 1391 does not apply to defendant because her judgment was final before Sen. No. 1391 became effective. The People argue that defendant waived her right to have a juvenile fitness hearing. We need not determine the People's waiver issue because defendant's contention fails on the merits.

4

A.    BACKGROUND

Historically, California required a judicial determination of unfitness for juvenile court before a minor could be prosecuted in adult court.  (See *Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1489, & fn. 4.)  With the passage of Proposition 21 in March 2000, a local prosecutor was authorized, for specified circumstances, to file a criminal action against a minor offender directly in adult criminal court, under "discretionary direct filing."  (Former Welf. & Inst. Code, § 707, subd. (d); see generally *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548-550; *Juan G.*, at p. 1489, & fn. 4.)  Moreover, certain specified crimes, not applicable here, were considered so serious that direct filing in adult court was mandatory.  (Former Welf. & Inst. Code, § 602, subd. (b); *Juan G.*, at pp. 1488-1489.)

On November 8, 2016, Proposition 57 passed; it became effective the next day, November 9, 2016.  Among other changes, Proposition 57 eliminated the mandatory and discretionary direct filing of juvenile cases in adult court, and various presumptions that a juvenile is not fit to be prosecuted in juvenile court.  (Welf. & Inst. Code, § 707, subd. (a)(1).)  Proposition 57 required that an allegation of criminal conduct against any person under 18 years of age must be commenced in juvenile court.  To prosecute a minor in adult court, the prosecution must file a motion to transfer the case from juvenile to adult court.  (Welf. & Inst. Code, § 707, subd. (a)(1); *People v. Superior Court of Riverside County (Lara)* (2018) 4 Cal.5th 299, 305.)  Proposition 57 applied retroactively to all cases not yet final.  (*Lara*, at pp. 304, 307.)

Sen. No. 1391, enacted in September 2018, and effective on January 1, 2019, eliminates a prosecutor's ability to seek transfer of 14- and 15-year-old minors from juvenile court to adult court, except where a minor is alleged to have committed a specified serious offense and is not apprehended prior to the end of juvenile court jurisdiction. (Welf. & Inst. Code, § 707, subds. (a)(1) and (a)(2), and (b).) Sen. No. 1391 is retroactive to nonfinal judgments. (*People v. Superior Court* (*I.R.*) 38 Cal.App.5th 383, 392, review granted Nov. 26, 2019, S257773; *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1038.)

### B. JUDICIAL ESTOPPEL

" ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] *The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies*. [Citation.] Application of the doctrine is 'discretionary.' " [Citation.] The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*People v. Castillo* (2010) 49 Cal.4th 145, 155.)

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. (*Pegram v. Herdrich* (2000) 530 U.S. 211, 228, fn. 8.) Enforcement of the

doctrine avoids the perception that the court was misled either the first time or the second time.  (*New Hampshire v. Maine* (2001) 532 U.S. 742, 750.)

C.     JUDICIAL ESTOPPEL DOES NOT APPLY

In this case, defendant claims that the prosecution is judicially estopped from claiming that Sen. No. 1391 does not apply because the People, in its request for abandonment of appeal, stated:  "The reason for this action is the passage of Senate Bill 1391, signed into law on September 30, 2018, and effective January 1, 2019, is applicable to this matter as it is not final on appeal."  In response, this court dismissed the appeal and issued a remittitur on November 19, 2019.  The question, therefore, is whether this statement by the People constitutes a successful litigation of the issue of the applicability of Sen. No. 1391.  We agree with the People that it does not.

As noted by the People, California Rules of court, Rule 8.316 (a) provides as follows:  "An appellant may abandon the appeal *at any time by filing an abandonment of the appeal* signed by the appellant or the appellant's attorney of record."  (Italics added.)  The appellate court then may dismiss the appeal and direct immediate issuance of the remittitur.  (Cal.  Rules of Court, rule 8.316 (b)(2).)  Here, although the People gave a reason for abandoning the appeal, there is nothing in the order to indicate that this court considered the People's reason for the abandonment of its appeal, since the People had a right to abandon the appeal at any time.  Nonetheless, defendant argues that we could have denied the People's request for abandonment because it was a case involving an important question or a question that  might evade review.  We disagree.  The People's appeal was based on the reduction of defendant's conviction from murder to

manslaughter; it did not involve an important question or a question that might evade review. Although defendant argues that "a bare request for dismissal might have been met with resistance by this Court," so "it made sense for the prosecution to advocate for the dismissal it wanted," defendant's argument is pure conjecture. Again, there is nothing in the record to indicate that the parties litigated the issue of whether Sen. No. 1391 applied to this case or that this court dismissed the People's appeal based on this theory. The People's mere statement regarding Sen. No. 1391 did not constitute a successful litigation of the applicability of Sen. No. 1391 to this case. Therefore, judicial estoppel does not apply to this case.

D.     SEN. NO. 1391 IS NOT APPLICABLE TO THIS CASE

As noted above, Sen. No. 1391 became effective on January 1, 2019. For purposes of determining whether an ameliorative statute such as Sen. No. 1391 applies retroactively, the California Supreme Court has stated that " '[t]he key date is the date of final judgment. If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies.' " (*People v. Vieira* (2005) 35 Cal.4th 264, 305-306, quoting *In re Estrada* (1965) 63 Cal.2d 740.) A judgment becomes final when the defendant no longer has an avenue of remedy on direct appeal. (See *People v. Ketchel* (1966) 63 Cal.2d 859, 864.) This normally occurs when the time for petitioning for a writ of certiorari in the United States Supreme Court has expired, which is 90 days after a judgment by the California Supreme Court. (*Vieira*, at p. 306; U.S. Supreme CT. Rules, rule 13.)

8

In this case, defendant did not appeal the judgment, cross-appeal from the People's appeal, oppose the People's motion to dismiss the appeal, or make a motion to recall the remittitur. The dismissal of an appeal is final when filed. (Cal. Rules of Court, rule 8.366(b)(2).) Here, there was no denial of review by the California Supreme Court since no party requested review. Hence, finality of the judgment did not extend beyond the date of issuance of the remittitur. Therefore, the judgment in this case became final when the remittitur was issued on November 19, 2018—one and a half months prior to the date Sen. No. 1391 went into effect.

In sum, the trial court properly denied defendant's motion for reconsideration because this case was final when Sen. No. 1391 went into effect.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.

9